NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1451
_____

KEITH J. MITAN,

Appellant

v.

UNITED STATES POSTAL INSPECTION SERVICE;
GEORGE P. CLARK, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY OF POSTAL INSPECTOR
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-12-cv-06408)
District Judge: Hon. Nitza I. Quinones Alejandro
_____

Submitted under Third Circuit LAR 34.1(a)
June 10, 2016

Before: CHAGARES, KRAUSE, and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Filed: July 27, 2016)
_____

OPINION*
_____

---

&ast; This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Circuit Judge.

In this action brought pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), plaintiff Keith Mitan alleges that defendant George Clark, a postal inspector for the United States Postal Inspection Service, violated his Fourth Amendment rights. The District Court dismissed the complaint and denied leave to amend. For the reasons explained herein, we will affirm in part (as to the dismissal) and reverse in part (as to the denial of leave to amend).

I.

Because we write exclusively for the parties, we set forth only those facts necessary to our disposition.

Plaintiff Keith Mitan ("Mitan") alleges in his first amended complaint that in 2001 his brother, Kenneth Mitan ("Kenneth"), acting as an agent of Mitan Estates, Inc. ("MEI"), entered into an agreement to purchase 3230 Reba Court, Bloomington, Indiana ("the Real Estate") from the Richard E. Deckard Family Limited Partnership ("the Partnership"). In May 2003, Kenneth filed a Chapter 11 bankruptcy petition. The Partnership filed an action in Indiana state court in January 2009, seeking forfeiture or foreclosure of the Real Estate. On September 17, 2009, the state court awarded "full legal and equitable title to the real estate and personal property therein" to the Partnership, even though the Partnership had never obtained relief from the automatic bankruptcy stay that was still in effect, had not asked the state court to award personal property, and had failed to name MEI as a defendant despite its interest in the Real Estate. Appendix ("App.") vol. 2, 35, 56-57.

2

On or about October 1, 2009, agents of the Partnership granted defendant George Clark of the United States Postal Inspection Service access to the Real Estate and the personal property therein, despite knowing that some of the personal property inside belonged to Mitan. Clark seized some of Mitan's personal property, including materials that were subject to the attorney-client privilege. In November 2010, a state appeals court reversed the portion of the judgment that had awarded the personal property contained within the Real Estate to the Partnership, but the Government continued to retain Mitan's personal property.

Mitan alleges that Clark violated his Fourth Amendment rights by unreasonably seizing and retaining his personal property without a warrant.[1] On November 22, 2013, the District Court dismissed the claim against Clark in his official capacity because of sovereign immunity. It dismissed the claim against Clark in his personal capacity because Mitan had no legal interest in the Real Estate and the Partnership had consented to the entry and seizure; as such, no "clearly established constitutional right" had been violated.[2] App. vol. 1, 16-18. On December 24, 2013, the District Court denied Mitan's motion for reconsideration. It also denied Mitan's motion to amend his complaint a second time, finding that his proposed amendments were futile because they would not correct the deficiencies of the first amended complaint. In the proposed second amended

---

[1] The amended complaint contained additional counts and defendants, but Mitan is appealing only the single Fourth Amendment claim against Clark.

[2] Although the District Court did not expressly invoke the doctrine of qualified immunity, the "clearly established" language in its ruling is almost certainly a reference to qualified immunity, a defense that Clark argued before the District Court and thereby preserved for appeal.

complaint, Mitan eliminated all references to the state court judgment, his brother's

bankruptcy, and the Partnership's having granted Clark access to the Real Estate and

personal property therein. He also added allegations that he "was legally authorized by

MEI to keep his personal property inside the house located on the Real Estate" and that

"Clark['s] . . . conduct was malicious." App. vol. 2, 95-96. Proceeding pro se (but being

an attorney himself), Mitan timely filed this appeal on February 21, 2014.

## II.

The District Court exercised jurisdiction under 28 U.S.C. § 1331, and we have

jurisdiction under 28 U.S.C. § 1291 to review the District Court's final decision. "We

review de novo a district court's grant of a motion to dismiss for failure to state a claim

under Federal Rule of Civil Procedure 12(b)(6)" and "are required to accept as true all

allegations in the complaint and all reasonable inferences that can be drawn from them

after construing them in the light most favorable to the nonmovant." Foglia v. Renal

Ventures Mgmt., LLC, 754 F.3d 153, 154 n.1 (3d Cir. 2014). A complaint must provide

"more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 319 (3d Cir.

2010). "The test . . . is whether the complaint alleges enough fact to state a claim to relief

that is plausible on its face, which is to say, enough fact to raise a reasonable expectation

that discovery will reveal evidence of illegality." Id. (quotations marks and citation

omitted). "[W]e review the District Court's denial of leave to amend for abuse of

discretion . . . ." U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 849

(3d Cir. 2014). "A district court would necessarily abuse its discretion if it based its

4

ruling on an erroneous view of the law . . . ." Cooter & Gell v. Hartmarx Corp., 496 U.S.

384, 405 (1990).

III.

Mitan attacks the validity of the state court judgment in favor of the Partnership,

contending that the state court lacked authority to award the Partnership title to his

personal property because he was never a party to that suit, and that the state court

judgment was void ab initio because of the automatic bankruptcy stay that was in place.

He further argues that, even if the seizure of his personal property was lawful at the time

because of the state court judgment, the continued retention of his personal property

became unlawful once the state appeals court reversed the judgment. And he maintains

that the ownership of the Real Estate is not dispositive because he would have had a

legitimate expectation of privacy in the personal property inside the Real Estate

regardless of who owned the Real Estate. Finally, he challenges the District Court's

finding that his attempt to amend the complaint a second time was futile.[3]

In response, Clark argues that the seizure was lawful because the owner (the

Partnership) had given consent, or at least an officer in his position could reasonably have

---

[3] In a small portion of his brief, Mitan argues the District Court erred in granting Clark official immunity, as Bivens expressly authorizes suits against federal officers. If Mitan is under the impression that the District Court relied on the doctrine of official immunity to dismiss the Bivens action against Clark in his personal/individual capacity, Mitan has misread the District Court's ruling. See App. vol. 1, 16 ("[A]ny claim against [Clark] in his official capacity is, therefore, dismissed." (emphasis added)). If Mitan is under the impression that Bivens authorizes official-capacity suits, he is mistaken. Consejo de Desarrollo Economico de Mexicali, A.C. v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007) ("[A] Bivens action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity.").

believed so. Clark also contends that Mitan lacks Fourth Amendment standing to bring this lawsuit because Mitan had no reasonable expectation of privacy in the property. Clark separately addresses Mitan's argument that the personal property was unlawfully retained even if it was lawfully seized initially. He argues that once property is lawfully seized, the Fourth Amendment is no longer implicated in a claim based on unlawful retention of that same property. And, according to Clark, even if the Fourth Amendment were implicated by unlawful retention of property, courts should not recognize a Bivens action because Fed. R. Crim. P. 41(g) already provides a limited remedy. See Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return . . . in the district where the property was seized."). At the very least, Clark argues, it would not have been apparent to a reasonable officer in his position that retaining the personal property constituted a violation of Mitan's Fourth Amendment rights. Lastly, Clark contends that Mitan has failed to show that the proposed amendments to the complaint would salvage his claim.

For the reasons set forth below, we conclude that the District Court properly dismissed the amended complaint but erred in concluding that the second round of proposed amendments was futile.

A.

The District Court properly dismissed the complaint. It would not have been apparent to a reasonable officer in Clark's position that his conduct was unlawful.

6

"In the ordinary case, the [Supreme] Court has viewed a seizure of personal property as per se unreasonable within the meaning of the Fourth Amendment unless it is accomplished pursuant to a judicial warrant issued upon probable cause and particularly describing the items to be seized." United States v. Place, 462 U.S. 696, 701 (1983); accord Brown v. Muhlenberg Twp., 269 F.3d 205, 209-10 (3d Cir. 2001). "Consent is an exception to the 'requirements of both a warrant and probable cause.'" United States v. Stabile, 633 F.3d 219, 230 (3d Cir. 2011) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973)). The presence of consent is judged under a standard of objective reasonableness. Illinois v. Rodriguez, 497 U.S. 177, 188 (1990) ("[D]etermination of consent to enter must be judged against an objective standard: would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" (ellipses and quotations marks omitted)); United States v. Murray, --- F.3d ----, No. 15-2054, 2016 WL 1697082, at *3 (3d Cir. Apr. 28, 2016) ("[T]he Fourth Amendment is not violated if the . . . officer's entry is 'based upon the consent of a third party whom the [officer], at the time of the entry, reasonably believe[s] to possess common authority over the premises, but who in fact does not do so.'" (quoting Rodriguez, 497 U.S. at 179)); see also Stabile, 633 F.3d at 232 (stating that the analysis of whether a party could consent to the seizure of personal property "parallels the analysis of whether [the party] could consent to [a] search").

Here, the state court judgment expressly awarded "full legal and equitable title to the real estate and personal property therein" to the Partnership, and the Partnership gave

its consent.[4]  App. vol. 2, 35, 57 (emphasis added).  Even if the judgment was invalid, its existence made it objectively reasonable for Clark to believe that the Partnership had authority to consent to the entry and seizure.

We also agree with Clark that it was not clearly established that the Fourth Amendment prohibited the continued retention of the property after the state appeals court partially reversed the judgment.  "The doctrine of qualified immunity shields officials from civil liability" unless "the violative nature of <u>particular</u> conduct is clearly established" — in other words, unless it can be said that "every reasonable official would have understood that what he [was] doing violate[d] [a] right."  <u>Mullenix v. Luna</u>, 136 S. Ct. 305, 308 (2015) (per curiam).  "[E]xisting precedent must have placed the statutory or constitutional question beyond debate."  <u>Id.</u>

We have held that "the scope of [a consented-to] search is limited by the terms of its authorization."  <u>United States v. Kim</u>, 27 F.3d 947, 956 (3d Cir. 1994) (quoting <u>Walter v. United States</u>, 447 U.S. 649, 656 (1980) (plurality)).  And there is support for the general proposition that "[w]ithdrawal of consent [may] be effectuated . . . by unequivocal act or statement."  <u>United States v. McMullin</u>, 576 F.3d 810, 815 (8th Cir. 2009); <u>see also, e.g.</u>, <u>United States v. Alfaro</u>, 935 F.2d 64, 67 (5th Cir. 1991).  But Mitan has not cited, and we are not aware of, authoritative precedent specifically imposing a Fourth Amendment duty on officers to return property that was lawfully seized by

---

[4] Because the state court judgment specifically awarded title to "personal property therein," we have no occasion to address whether the Partnership's ownership of the Real Estate, on its own, would have permitted Clark to conclude reasonably that the Partnership's authority to consent extended to the personal property inside.

consent when, months later, the consenter loses authority (or apparent authority) over the property by virtue of an intervening court decision. As a result, we hold that Clark's actions did not constitute a violation of Mitan's clearly established Fourth Amendment rights.

B.

The proposed amendments to the complaint offered by Mitan were not futile, contrary to what the District Court held. Because the District Court's decision to deny leave to amend was based on that erroneous conclusion, we must reverse the denial and remand with instructions to grant Mitan leave to file the proposed second amended complaint.

The proposed second amended complaint eliminates all references to the state court judgment, the bankruptcy, and the Partnership's consent to the entry and seizure. If the proposed second amended complaint were adopted, then in assessing the sufficiency of the allegations, the District Court would have to ignore any unfavorable facts admitted by Mitan in the earlier complaints (although they could resurface at a later stage of litigation). W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 171-73 (3d Cir. 2013) ("[A]t the motion to dismiss stage, when the district court typically may not look outside the four corners of the amended complaint, the plaintiff cannot be bound by allegations in the superseded complaint."). And if no consent was ever given, there would be no basis appearing in the complaint for Clark's warrantless entry into the

9

house and seizure of the property inside, even under the standards of objective reasonableness discussed above.[5]

The existence of the state court judgment would remain judicially noticeable, S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999), but would not necessarily deprive Mitan of Fourth Amendment standing to challenge the initial seizure of the personal property. Mitan has standing to challenge the seizure if he held a possessory interest in the property at the time of the seizure.[6] A state court judgment awarding ownership of Mitan's personal property to the Partnership would ordinarily preclude a finding that Mitan retained a possessory interest, but it is not clear in this case that the judgment was meant to, or even could, bind Mitan or his

---

[5] We therefore need not resolve at this stage Clark's argument that the unauthorized retention of property after a lawful seizure implicates the Fourth Amendment. Nor, given the lack of any allegation in the proposed second amended complaint regarding Kenneth's criminal case, do we need to decide Clark's argument that Federal Rule of Criminal Procedure 41(g) is a "special factor" counseling against the application of Bivens.

[6] We note that the parties focus on whether Mitan had a legitimate/reasonable "expectation of privacy," which is misplaced where the allegations pertain only to the unlawful seizure of property and not to any search of it. App. vol. 2, 40, 96; see United States v. Miller, 799 F.3d 1097, 1101-03 (D.C. Cir. 2015) (discussing this mismatch). The Fourth Amendment "protects two types of expectations, one involving 'searches,' the other 'seizures.'" United States v. Jacobsen, 466 U.S. 109, 113 (1984). "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." Id. "A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property." Id. Although possessory interests and privacy interests are often related, the Supreme Court has rejected the notion that "the Fourth Amendment protects against unreasonable seizures of property only where privacy or liberty is also implicated." Soldal v. Cook Cty., Ill., 506 U.S. 56, 65 (1992). Rather, "seizures of property are subject to Fourth Amendment scrutiny even though no search within the meaning of the Amendment has taken place." Id. at 68; see also Jacobsen, 466 U.S. at 113-18.

10

personal property housed at the Real Estate.[7]  The state court judgment names only

Mitan's brother, Kenneth,[8] as a defendant, and it is not apparent from the proposed

second amended complaint why the judgment would have bound Mitan or his property,

nor has Clark advanced any theory as to why that would be.  We therefore cannot

conclude at the motion to dismiss stage that the state court judgment precludes Mitan

from claiming to have held a possessory interest in the personal property notwithstanding

the transfer of the Real Estate to the Partnership.  See Rycoline Prods., Inc. v. C & W

Unlimited, 109 F.3d 883, 886 (3d Cir. 1997).  And if not conclusively established by the

prior state court judgment, the extinction of Mitan's possessory interest in the personal

---

[7] "The preclusive effect of a state court judgment in a subsequent federal lawsuit is determined by the Full Faith and Credit Statute . . . ."  Metro. Edison Co. v. Pa. Pub. Util. Comm'n, 767 F.3d 335, 350 (3d Cir. 2014).  "If [a] court did not have jurisdiction over the subject matter or the relevant parties, full faith and credit need not be given." Underwriters Nat'l Assurance Co. v. N.C. Life & Accident & Health Ins. Guar. Ass'n, 455 U.S. 691, 705 (1982); see also W. Union Tel. Co. v. Pennsylvania, 368 U.S. 71, 75 (1961) ("[A] state court judgment need not be given full faith and credit . . . as to parties or property not subject to the jurisdiction of the court that rendered it.").

[8] We also question, but need not decide, whether the state court had authority to issue a judgment affecting property belonging to MEI (also not named as a defendant) or even Kenneth.  At the time of the state court judgment (dated September 17, 2009), Kenneth was a debtor in bankruptcy proceedings filed in the Central District of California on May 20, 2003, In re Kenneth M. Mitan, No. 2:03-bk-23582-AA (Bankr. C.D. Cal.), and then transferred to the Eastern District of Michigan on November 14, 2003, In re Kenneth M. Mitan, No. 03-71601-swr (E.D. Mich.), where a final decree was not entered until February 25, 2011.  "Ordinarily, the filing of a bankruptcy petition imposes an automatic stay on all debt collection activities, including foreclosures."  In re Taylor, 655 F.3d 274, 278 (3d Cir. 2011).  "Absent relief from the stay, judicial actions and proceedings against the debtor are void ab initio."  Mar. Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1206 (3d Cir. 1991).  Clark offers no substantive response to Mitan's argument about the automatic stay, and as far as we are aware, no relief from the stay was ever granted.

11

property inside the house cannot be found within the allegations in the proposed second amended complaint.[9]

## IV.

For the foregoing reasons, the judgment of the District Court will be affirmed in part and reversed in part. The case is remanded to the District Court with instructions to grant Mitan leave to file the proposed second amended complaint and for further proceedings as the District Court sees fit, which may include limited threshold discovery relevant to the issue of qualified immunity. See Fed. R. Civ. P. 26(b)(1); Crawford-El v. Britton, 523 U.S. 574, 599 (1998).

---

[9] Clark does not, for example, contend that Mitan had abandoned the personal property — which, in any event, would be difficult to argue. Mitan alleges that, prior to the state court judgment, MEI had given him permission to store his property in the house on the Real Estate. Only two weeks (or slightly less, reading Mitan's "on or about" language in his favor) elapsed between the September 17, 2009 judgment and when Clark seized Mitan's personal property on or about October 1, 2009. It is unclear whether Mitan had any notice of the change in the Real Estate's ownership during that period.

12